IN THE SUPREME COURT OF THE STATE OF DELAWARE

JORDAN ALLEN,[1]              §
                                          §

       Respondent Below,       §   No. 402, 2023
       Appellant,                §
                                            §   Court Below—Family Court
       v.                           §   of the State of Delaware
                                            §

DELLA HART,                    §   File No. CN22-04221
                                            §   Petition No. 22-17146

       Petitioner Below,         §
       Appellee.                §

DELLA HART,                    §
                                                §

       Respondent Below,       §   No. 73, 2024
       Appellant,                §
                                            §   Court Below—Family Court
       v.                           §   of the State of Delaware
                                            §

JORDAN ALLEN,             §   File No. CN22-04221
                                              §   Petition No. 22-17146

       Petitioner Below,         §
       Appellee.                §
                                            §   **CONSOLIDATED**

Submitted: March 27, 2024
Decided:     April 8, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## <u>ORDER</u>

After consideration of the parties' briefs and the record below, it appears to the Court that:

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(1)     The appellant in Appeal No. 402, 2023, Jordan Allen ("Ex-Husband"), filed an appeal from the Family Court's order, dated October 12, 2023, resolving ancillary matters ("Ancillary Matters Order").  While Appeal No. 402, 2023 was pending, the Family Court found Ex-Husband in contempt of the Ancillary Matters Order on December 20, 2023 ("Rule to Show Cause Order") and later granted Ex-Husband's motion to stay the Ancillary Matters Order pending appeal on February 15, 2024 ("Stay Order").  The appellant in Appeal No. 73, 2024, Della Hart ("Ex-Wife"), filed an appeal from the Stay Order and sought expedited scheduling.  This Court consolidated and expedited both appeals. Having considered the parties' positions and the record on appeal, we conclude that the Ancillary Matters Order should be affirmed.  We do not address the Stay Order, which is now moot.

(2)     The parties were married on March 10, 1991, separated on November 1, 2019, and divorced on February 10, 2023.  The Family Court retained jurisdiction over property division, alimony, court costs, and attorneys' fees.  On August 3, 2023, the Family Court granted Ex-Wife's motion to compel Ex-Husband's response to her document production requests.

(3)     On September 12, 2023, the Family Court held a hearing on ancillary matters.  Ex-Husband still had not produced all of the financial documents responsive to Ex-Wife's discovery requests.  During the hearing, the Family Court heard testimony from both parties and one of Ex-Wife's doctors.

2

(4)     On October 12, 2023, the Family Court issued the Ancillary Matters Order.  The Family Court ordered the sale of the marital residence, warning that if Ex-Husband failed to act in good faith in taking the necessary steps for the sale, then Ex-Wife would become responsible for the sale.   Applying 13 *Del. C.* § 1513, the court held that all non-retirement assets, including the proceeds from the sale of the marital residence, would be apportioned 60% to Ex-Wife and 40% to the Ex-Husband with the reverse for marital debts.  Applying 13 *Del. C.* § 1512, the court concluded that Ex-Wife was dependent and ordered Ex-Husband to pay alimony of $830.00 per month beginning on October 15, 2023.  The Family Court also ordered Ex-Husband to re-name Ex-Wife as the primary beneficiary of an insurance policy obtained during the marriage.  Finally, the Family Court denied Ex-Wife's request that Ex-Husband reimburse her for attorneys' fees and court costs.

(5)     On October 31, 2023, Ex-Husband filed an appeal of the Ancillary Matters Order in this Court.  On November 22, 2023, Ex-Wife filed a petition for a rule to show cause alleging that Ex-Husband was in contempt of the Ancillary Matters Order because, among other things, he had not retained a realtor or paid any alimony.  After a hearing on December 20, 2023, the Family Court issued the Rule to Show Cause Order.  The Family Court found Ex-Husband in contempt of the Ancillary Matters Order and granted Ex-Wife exclusive authority to list and sell the house.  Ex-Husband did not appeal the Rule to Show Cause Order.

3

(6) On January 29, 2024, Ex-Wife filed another petition for a rule to show cause and a motion for a court order authorizing the court clerk to sign the deed and other documents related to the upcoming sale of the house. Ex-Wife alleged that Ex-Husband refused to sign the settlement papers for the sale, which was scheduled to close on February 16, 2024. On February 13, 2024, counsel entered an appearance for Ex-Husband (who had been appearing pro se) and filed a motion to stay the Ancillary Matters Order pending appeal. Ex-Wife opposed the motion. After a hearing on February 14, 2024, the Family Court granted Ex-Husband's motion to stay, but ruled that any financial losses Ex-Wife suffered as a result of the failed settlement and Ex-Husband's failure to pay the utilities and mortgage would be reimbursed to Ex-Wife from the Ex-Husband's share of the eventual sale proceeds. On February 22, 2024, Ex-Wife filed an appeal of the Stay Order in this Court.

(7) This Court reviews the Family Court's factual and legal determinations as well as its inferences and deductions.[2] We will not disturb the Family Court's rulings on appeal if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical

---

[2] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

reasoning process.[3] We review legal rulings *de novo*.[4] If the Family Court correctly applied the law, then our standard of review is abuse of discretion.[5]

(8) We first address Ex-Husband's arguments in Appeal No. 402, 2023.[6] Ex-Husband's arguments may be summarized as follows: (i) the Family Court erred in awarding Ex-Wife 60% of the proceeds from the sale of the house because Ex-Wife did not move out of the house in November 2019 as found by the Family Court, Ex-Wife has chosen not to work despite having multiple degrees, and Ex-Husband made significant contributions to the house; (ii) the Family Court failed to address the marital debts he owes; (iii) he should not be required to pay Ex-Wife $3,900 for her car; (iv) the Family Court erred in awarding Ex-Wife alimony; (v) he cannot maintain the life insurance policy with Ex-Wife as the primary beneficiary because it is tied to the house that is to be sold; and (vi) Ex-Wife filed a false tax return in 2023 and placed holds on his mail that caused delays in his receipt of mail.

(9) In determining how to divide the parties' marital property, the Family Court considers all relevant factors, including the factors listed in Section 1513(a).

---

[3] *Id.*
[4] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008)
[5] *CASA v. Dep't of Servs. for Children, Youth and Their Families*, 834 A.2d 63, 66 (Del. 2003).
[6] Relying on *Schmidt v. Schmidt*, 610 A.2d 1374 (Del. 1992), Ex-Wife asks this Court to dismiss Ex-Husband's appeal of the Ancillary Matters Order without reaching the merits because the Family Court found him in contempt of that order. This Court has dismissed appeals where an appellant is in contempt of the order appealed, but under the circumstances of this case we have chosen to address the merits of Ex-Husband's appeal. As Ex-Wife acknowledges, the Family Court granted Ex-Husband's belated motion to stay the Ancillary Matters Order pending appeal.

The Family Court "has broad discretion in fixing the percent of the marital assets to award to each spouse" under Section 1513.[7] In the Ancillary Matters Order, the Family Court carefully considered each of the Section 1513 factors and concluded that the marital property should be divided 60% to Ex-Wife and 40% to Ex-Husband with the reverse for marital debts.

(10) Ex-Husband argues that the Family Court should not have awarded Ex-Wife 60% of the proceeds from the sale of the house because Ex-Wife moved out in May 2023, not November 2019 as stated by the Family Court. Contrary to Ex-Husband's belief, the Family Court did not state that Ex-Wife moved out of the house in November 2019 or rely upon this date in awarding Ex-Wife 60% of the proceeds from the sale of the marital home. In fact, the Family Court highlighted the disparity in the parties' incomes, the parties' lack of retirement assets, and the dissipation of assets based on Ex-Husband's failure to produce discovery as the basis for dividing the marital property 60/40 in favor of Ex-Wife.

(11) Ex-Husband also challenges the Family Court's reliance on the income disparity between the parties, contending that Ex-Wife has chosen not to work despite having two degrees. He ignores testimony that Ex-Wife has no work experience relevant to her education, suffers from several medical conditions that affect her daily functioning, and receives disability benefits from the Social Security

---

[7] *Mays v. Mays*, 1988 WL 141148, at *2 (Del. Nov. 23, 1988).

6

Administration. Even with the Family Court attributing Ex-Wife with part-time income of $11,814.40 in addition to the $14,943.60 she received in annual disability benefits, there was a significant disparity between Ex-Wife's annual income of $26,758 and Ex-Husband's annual income of $59,982. The Ex-Husband's suggestion that the Family Court ignored improvements he made to the marital residence, is mistaken. The Family Court found that both parties contributed to the marital property, Ex-Wife through her income when employed, lawsuit funds, and homemaking responsibilities and Ex-Husband through his income and his repairs and renovations to the house. Ex-Husband has not shown that the Family Court erred in dividing the proceeds from the sale of the marital home 60/40 in favor of Ex-Wife.

(12) Ex-Husband next contends that the Family Court failed to address marital debts he owes. He identifies those debts as $6,000 owed on two Home Depot credit cards and one Capital One credit card. The Family Court addressed the debts that the parties raised and documented at the ancillary hearing. Ex-Husband did not mention the Capital One credit card during the hearing. He did refer to Home Depot credit cards, but did not offer any testimony or documents concerning amounts owed on those credit cards. As the Family Court found, Ex-Husband responded belatedly and incompletely to Ex-Wife's document requests, which included requests for credit card statements. Ex-Wife testified that Ex-Husband never provided her with

7

statements for the Home Depot cards.  Under these circumstances, the Family Court did not err in its handling of the parties' marital debts.

(13)  Contrary to Ex-Husband's argument, the Family Court did not order him to pay Ex-Wife $3,900 for her car.  In dividing the marital property, the Family Court ordered that each party retain their own car, set a value for each car based on the evidence presented ($6,525 for Ex-Wife's car and $9, 634 for Ex-Husband's car), and included the cars in the property distribution chart.  The chart reflects that once the parties' assets and debts were reconciled in accordance with the property and debt divisions established by the Family Court, Ex-Husband owed Ex-Wife $3,978. This amount was to be deducted from Ex-Husband's share of the sale proceeds of the house.  The Family Court did not err in dividing the marital property and determining that Ex-Husband owed Ex-Wife $3,978.57.

(14)  In challenging the Family Court's alimony award to Ex-Wife, Ex-Husband argues that Ex-Wife has chosen not to work and that his income should not have included rent paid to him by one of his children, overtime pay, or a side business that he does not have.  Under the alimony statute, 13 *Del. C.* § 1512, the Family Court must consider "all relevant factors," including the enumerated statutory factors, when determining whether a party seeking alimony is dependent and calculating alimony if dependency is found.[8]  The Family Court considered all

---

[8] *Glanden v. Quirk*, 128 A.3d 994, 1002 (Del. 2015).

of the statutory factors in determining that Ex-Wife was dependent. As previously discussed, the record reflects that Ex-Wife has no work experience relevant to her education, suffers from several medical conditions that impact her daily functioning, and receives disability benefits. The Family Court attributed Ex-Wife with part-time income of $11,814.40 in addition to the $14,943.60 she received in annual disability benefits, but her monthly income of $2,190 was still $830 less than her monthly expenses of $3,020. Ex-Husband questions how Ex-Wife's monthly expenses could include $1,300 in rent given that she testified she did not have a permanent address at the time of the ancillary hearing, but Ex-Wife explained how she investigated what her monthly rent was likely to be. The Family Court did not err in determining that Ex-Wife was dependent on Ex-Husband for support.

(15) As to the calculation of the Ex-Husband's monthly income, the Family Court did not, as Ex-Husband contends, include rent one of his children paid him, overtime, or any income from a side business. The Family Court calculated Ex-Husband's monthly income based on the one pay stub he produced from his job as a plumber. After deducting Ex-Husband's monthly expenses from his monthly income, the Family Court calculated that Ex-Husband had a monthly surplus of $629. This surplus was less than Ex-Wife's monthly shortfall, but the Family Court found that the Ex-Husband had the opportunity to earn additional income through overtime, side jobs in construction, and monthly rent he received from one of his

children. The Family Court also noted that Ex-Husband's monthly expenses would be lower after the house was sold and he no longer had to pay the mortgage. Given Ex-Husband's ability to earn additional income, the length of the marriage, and Ex-Husband's failure to comply with Ex-Wife's discovery requests, the Family Court found it equitable for Ex-Husband to pay $830 in monthly alimony. Ex-Husband disputes the Family Court's findings concerning his ability to earn additional income, but the record reflects that Ex-Husband had previously earned overtime and had the skills and experience to make extra money on side improvement projects. The Family Court did not err in awarding alimony to Ex-Wife.

(16) Ex-Husband also challenges the Family Court's ruling that he reinstate Ex-Wife as the beneficiary of his life insurance policy. He claims that the policy is tied to the house and will not be valid when the house is sold. Both parties testified about this policy during the ancillary hearing, but Ex-Husband never mentioned the policy being tied to the house or becoming invalid when the house was sold. We will not consider this argument for the first time on appeal.[9] Similarly, we will not consider Ex-Husband's claim, also raised for the first on appeal, that Ex-Wife filed a false tax return with his income and social security number in 2023.[10]

---

[9] Supr. Ct. R. 8. According to Rule to Show Cause Order that was not appealed, Ex-Husband stopped paying for the policy because he intended it to cover the mortgage on the home and he no longer needed it with the home to be sold. As a result, the policy was cancelled.
[10] *Id.*

10

(17)   Finally, Ex-Husband contends, as he did below, that Ex-Wife placed holds on his mail preventing him from receiving mail in a timely manner.  We construe this as an argument that the Family Court erred in finding he failed to cooperate with discovery and allowing Ex-Wife to retain *de minimis* amounts in several bank accounts without setoff.  This argument is without merit.  Ex-Husband recognized his obligation to produce documents responsive to  Ex-Wife's requests at the August 3, 2023 pretrial conference.  During the September 12, 2023 ancillary hearing, Ex-Wife's counsel advised the court that Ex-Husband had only produced a few documents in response to Ex-Wife's requests.  Ex-Husband did not dispute that he failed to produce bank statements for several accounts.  The Family Court did not err in finding Ex-Husband failed to cooperate with discovery and allowing Ex-Wife to retain *de minimis* amounts in several bank accounts without setoff.  In sum, we conclude that none of Ex-Husband's claims concerning the Ancillary Matters Order has merit.

(18)   In light of our affirmance of the Ancillary Matters Order, it is unnecessary to address the Ex-Wife's appeal of the Stay Order, which is now moot.  We nonetheless take this opportunity to emphasize that stays pending appeal are governed by Supreme Court Rule 32 and the four-part test set forth in *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Commission*.[11]

---

[11] 741 A.2d 356 (Del. 1998).  No one invoked or addressed *Kirpat* in the Family Court proceedings.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice